NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

MICHAEL EDWARD MALERBA, *Appellant*.

No. 1 CA-CR 24-0305

FILED 03-06-2025

---

Appeal from the Superior Court in Mohave County
No. S8015CR202300458
The Honorable Douglas R. Camacho, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

Ramos Law Firm, Scottsdale
By Paul A. Ramos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Andrew M. Jacobs joined.

---

**B A I L E Y**, Judge:

**¶1**         Michael Edward Malerba appeals his convictions and sentences for aggravated assault, criminal damage, unlawful flight, and two counts of endangerment.  He argues that the superior court erred in not striking a detective's rebuttal testimony because the State failed to disclose him as a ballistics expert.  We disagree and affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         We view the evidence and reasonable inferences therefrom in the light most favorable to affirming.  *State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).

**¶3**         In April 2023, Arizona Department of Public Safety detectives Romanski and Perea followed Malerba's pickup into his neighborhood in their unmarked vehicles to arrest him.  At some point, Perea realized Malerba had gotten behind him and was following him down a narrow, dead-end road.  Perea then radioed Romanski, who turned on his emergency lights and parked his SUV in the middle of the road to box Malerba in and prevent him from fleeing.

**¶4**         Malerba made a U-turn and drove toward Romanski. Romanski, who was wearing his police gear, got out of his SUV, drew his service weapon, and repeatedly yelled at Malerba, "Police.  Put your hands up.  Exit the vehicle."  Malerba stopped, remained in the driver's seat, and put his hands in the air.  But almost immediately, Malerba dropped his hands back onto the steering wheel and drove at Romanski.  Malerba's truck side-swiped the SUV, sucking Romanski's leg in between the two vehicles, and throwing him to the ground.  As Malerba's pickup struck him, Romanski fired one shot through the pickup's windshield near the steering wheel, hitting Malerba's finger.  Malerba sped away, but after a series of collisions with detectives' vehicles, he was caught and arrested.

**¶5** A grand jury indicted Malerba on two counts of aggravated assault (counts 1–2), one count of criminal damage (count 3), one count of unlawful flight from a pursuing law enforcement vehicle (count 4), and three counts of endangerment (counts 5–7). The superior court granted Malerba's motion for judgment of acquittal as to counts 2 and 7, *see* Ariz. R. Crim. P. ("Rule") 20, and the jury convicted Malerba of the remaining counts. After the jury found two aggravating factors, the court sentenced Malerba to concurrent and consecutive terms of incarceration totaling 20.5 years.

**¶6** We have jurisdiction over Malerba's timely appeal. *See* Ariz. Const. art. 6, § 9; Ariz. Rev. Stat. ("A.R.S.") §§ 12–120.21(A)(1), 13–4031, 13–4033(A)(1).

## DISCUSSION

**¶7** At trial, Romanski testified as a victim in the State's case-in-chief. After the State rested, Malerba testified that after turning his pickup around and recognizing "who [Romanski] is," he stopped and put his hands up. He claimed Romanski shot at him while his hands were up, which caused him to fear for his life and attempt to drive around Romanski. He denied intentionally driving into Romanski.

**¶8** The State cross-examined Malerba, then recalled Romanski as a rebuttal witness to testify about how car windshields affect a bullet's trajectory. After providing foundation on his training and education, Romanski testified that a bullet fired through a windshield will deflect downward rather than upward because the "windshield is slanted backwards."

**¶9** Malerba objected, arguing the State did not notice Romanski as an expert, and asked the court to strike the rebuttal testimony. The prosecutor responded that she did not know Malerba "would testify that the bullet went through his hand when his hands were up. That's the basis for recalling [Romanski] and eliciting this testimony. I didn't think it was contested that [Malerba] got shot in the hand while his hands were on the steering wheel." The court overruled the objection, reasoning that "nobody knew what [Malerba] was going to be testifying about," or that "the trajectory of the bullet would actually be an issue in this case," so "part of the reason why the [S]tate would not have listed Detective Romanski as an expert as to this issue is because nobody knew that this was going to be an issue." The court then granted a recess so Malerba could interview Romanski about his expert testimony. After interviewing Romanski,

Malerba's counsel cross-examined him on his qualifications, education, and training, and confirmed he had not participated in any investigation to determine the bullet's trajectory in Malerba's case.

¶10 On appeal, Malerba argues the superior court erred by allowing Romanski's rebuttal testimony because the State failed to disclose him as a ballistics expert. We review evidentiary rulings for an abuse of discretion. *State v. Pina-Barajas*, 244 Ariz. 106, 108, ¶ 4 (App. 2018).

¶11 The State generally must disclose the name of any expert it intends to call at trial and "a summary of the general subject matter and opinions on which the expert is expected to testify." Ariz. R. Crim. P. 15.1(b)(4)(A)–(C). A defendant must "provide written notice to the State specifying all defenses the defendant intends to assert at trial." Ariz. R. Crim. P. 15.2(b)(1). The requirement "is intended to be a broad disclosure of the defendant's case, including his rebuttal of the [S]tate's case as well as his own 'case-in-chief.'" *State v. Gonzales*, 123 Ariz. 11, 12 (App. 1979).

¶12 "Upon receiving the defendant's notice of defenses under Rule 15.2(b), the State must disclose the name and address of each person the State intends to call as a rebuttal witness, and any relevant written or recorded statement of the witness." Ariz. R. Crim. P. 15.1(h). "[I]t is obviously unreasonable to require the State to list in advance of trial and prior to the presentation of the defendant's case the names of all potential rebuttal witnesses, since the prosecution can rarely anticipate what course the defense will pursue." *State v. Sullivan*, 130 Ariz. 213, 216–17 (1981) (citing *State v. LaBarre*, 115 Ariz. 444, 447 (App. 1977)); *accord State v. Paxton*, 186 Ariz. 580, 587–88 (App. 1996) (concluding the untimely disclosure of a witness, resulting in the witness's preclusion during the State's case-in-chief, did not require preclusion on rebuttal).

¶13 When an untimely disclosure occurs, the superior court may "impose an appropriate sanction," Ariz. R. Crim. P. 15.7(b), which is left to the "sound discretion" of that court, *State v. Tyler*, 149 Ariz. 312, 315 (App. 1986). "But any sanction must be proportional to the violation and must have 'a minimal effect on the evidence and merits.'" *State v. Payne*, 233 Ariz. 484, 518, ¶ 155 (2013) (quoting *State v. Towery*, 186 Ariz. 168, 186 (1996)).

¶14 Here, Malerba did not put the State on notice before trial that the bullet's trajectory would be disputed. He made no mention of it in his pretrial Rule 15.2(b) disclosure statement, either through his defenses list or witness list. And although he noted the witness list would "be supplemented and provided as identified through additional investigation

and case preparation," the record shows no other disclosure statements. Moreover, at trial, Malerba's attorney acknowledged he "didn't anticipate this issue at all."

**¶15**     Our decision in *State v. Lewis*, 121 Ariz. 155 (App. 1978), is instructive and guides us here. There, as here, a defendant failed to disclose a defense under Rule 15.2(b)—in that case, one relating to the market value of certain stolen goods. *Id.* at 160. Because the defendant in *Lewis* failed to make that disclosure, the prosecution, as here, reacted to the surprise evidence by putting on rebuttal evidence the prosecution did not expect to use. *Id.* We approved the admission of that evidence, stating, "We cannot fault the prosecutor for failing to anticipate that the market value of the items would be at issue." *Id.* Neither can we find fault here with the prosecution's reaction to Malerba's surprise argument. *See also State v. Binford*, 120 Ariz. 86, 89 (App. 1978) (allowing the State to call witnesses to rebut the defendant's testimony, "which was the product of his last minute decision to [testify]").

**¶16**     Also as in *Lewis*, the court allowed Malerba's attorney to interview the witness who supplied the unanticipated rebuttal testimony. *See* 121 Ariz. at 160. Still, Malerba argues his interview with Romanski could not cure any alleged disclosure violation because he had no time to locate a rebuttal expert witness.

**¶17**     The superior court acted within its discretion in granting a recess to allow defense counsel to question Romanski about his expertise and qualifications outside the jury's presence and in allowing counsel to then cross-examine Romanski. *See State v. Roque*, 213 Ariz. 193, 210-11, ¶¶ 49–52 (2006), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 267, ¶¶ 11–15 (2017). Malerba never requested a continuance to find his own expert witness or any other remedy short of striking Romanski's testimony, and although the court appeared open to allowing Malerba to testify again after Romanski's rebuttal testimony, defense counsel ultimately chose not to recall Malerba. *See State v. Robinson*, 127 Ariz. 324, 329 (App. 1980) (finding no abuse of discretion where the defendant had a chance to interview an undisclosed rebuttal witness, did not ask for a continuance, and showed no prejudice).

**¶18**     Because "[a] witness should be precluded only as a last resort," *State v. Delgado*, 174 Ariz. 252, 257 (App. 1993) (citation omitted), the court also acted within its discretion in denying the only requested relief—striking Romanski's rebuttal testimony, *see State v. Armstrong*, 208 Ariz. 345, 353–54, ¶¶ 40–41 (2004) (stating the superior court "should seek

to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases" (quoting *State v. Schrock*, 149 Ariz. 433, 436–37 (1986))). "[P]reclusion is rarely an appropriate sanction for a discovery violation," *Delgado*, 174 Ariz. at 257 (citation omitted), and was particularly inapt here, because Malerba's own failure to disclose caused the State to use unexpected evidence. The court acted well within its discretion by denying Malerba's request to strike Romanski's expert testimony.

¶19 Finally, even if the superior court erred in allowing Romanski to testify on rebuttal—which it did not—any error was harmless beyond a reasonable doubt. The State presented overwhelming evidence of Malerba's guilt on each count, including the testimony of Romanski and Perea—who saw Malerba's pickup drive forward and heard Romanski say he was getting crushed before Romanski fired his gun—as well as the many exhibits admitted into evidence, including Romanski's body camera footage, which supports the detectives' testimony.

## CONCLUSION

¶20 We affirm Malerba's convictions and sentences.

